Filed 3/21/16  In re Sarahi R. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re SARAHI R., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B264527 (Super. Ct. No. J070388) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Petitioner and Respondent,<br><br>v.<br><br>J.J.,<br><br>    Appellant. | |

J.J. appeals jurisdiction and disposition orders adjudicating her daughter, Sarahi R., a dependent of the juvenile court (Welf. & Inst. Code, § 300, subds. (b) & (j))[1] and removing Sarahi from her custody (§ 361, subd. (c)(1)).  The trial court found that appellant's mental illness posed a substantial risk of harm to Sarahi.  We affirm.

*Facts and Procedural History*

Appellant suffers from Schizoaffective Disorder and Bipolar Disorder, and was treated at a psychiatric hospital shortly before Sarahi was born.  (§ 5150.)  Sarahi is appellant's seventh child.  None of Sarahi's half-siblings live with appellant.  The fifth

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

1

youngest sibling, Josiah M., was removed after appellant stopped taking her prescribed medication. Parental rights were terminated in February 2006. The sixth youngest sibling, Baby Boy J., was removed based on appellant's unresolved mental health issues and failure to follow the case plan with Josiah. The trial court bypassed services and terminated parental rights in June 2006.

After appellant became pregnant with Sarahi in 2014, appellant stopped taking her antipsychotic medication (Haldol) and anticonvulsant medicine (valproic acid). Without the medication, appellant was a danger to herself or others and was committed to a psychiatric hospital. (§ 5150, subd. (a).)

Six days after Sarahi was born, Ventura County Human Services Agency (HSA) received a referral that appellant was acting delusional and paranoid. Sarahi's presumed and biological father, Joseph R., reported that appellant was not taking her medication and feared that appellant would burn the house down.[2] Concerned about Sarahi's safety, father quit his job to care for Sarahi full time.

In March 2016, HSA received a referral that father put his hand over appellant's mouth to "shut her up" in a medical office. There were escalating domestic issues in which father continually placed the blame on appellant and her mental health issues.

On March 10, 2015, HSA filed a dependency petition for failure to protect (§ 300, subd. (b)) and sibling abuse (§ 300, subd. (j)). The petition alleged that appellant's mental health issues exposed Sarahi to a substantial risk of physical or emotional harm and that father had a history of substance abuse problems. It was alleged that Sarahi's half siblings, Josiah and Baby Boy J., were neglected due to appellant's mental health "issues" and that Sarahi was at risk of similar neglect. (§ 300, subd. (j).)

_____

[2] Father had a history of domestic violence, had lost his child from a prior marriage, and was prescribed medication for anger issues after he was released from prison but never took his medication. Father was diagnosed with Delusional Disorder and Sexual Disorder not otherwise specified and had prior arrests for driving under the influence and possession of an injection device.

At the detention hearing, the trial court ordered that Sarahi remain with father who was living with Sarahi's paternal grandmother. Appellant visited Sarahi and was provided referrals. HSA reported that appellant had significant mental health issues and was not participating in mental health services or taking her medication.

At the jurisdiction and disposition hearing, appellant stated that she was taking Abilify which had been prescribed by her obstetrician for anxiety. Appellant had not been to Ventura County Behavioral Health yet. Social Worker Jenny Perez testified that Sarahi would be at risk of harm until appellant started taking her prescribed medication and followed through with mental health treatment.

The trial court found that it was "not the strongest case I've ever seen, but I think the seriousness of [appellant's] mental illness, the fact that two children have already been lost because of it, and . . . she's not on her medication . . . . [A]ll of those [things], I think, support jurisdiction." The trial court removed Sarahi from appellant's custody and ordered family maintenance services for father and reunification services for mother.

*Substantial Evidence*

Appellant argues that the evidence does not support the jurisdictional finding that Sarahi was exposed to a substantial risk of serious physical harm or illness. (§ 300, subd. (b); *In re David M.* (2005) 134 Cal.App.4th 822, 829.) Appellant suffers from mental health issues but claims it never posed a risk of physical harm to Sarahi. Appellant, however, has a long history of noncompliance with mental health treatment. It rendered her unable to care for Sarahi's siblings and resulted in the termination of parental rights with respect to Josiah and Baby Boy J. Sarahi, like her half-siblings, has been exposed to a similar risk of harm. Six days after Sarahi's birth, appellant was off her medication and delusional and paranoid. Medical staff described appellant as aggressive and threatening.

At the jurisdiction and disposition hearing, three months later, little had changed. Appellant was not taking her prescribed medication and had not sought treatment even though she was ready to "face things" now. The jurisdictional order was

3

based not only on the risk of harm posed by appellant but father's substance abuse. Appellant did not dispute a separate allegation that she underwent psychiatric hospitalization while pregnant with Sarahi and that appellant's mental health issues periodically rendered her unable to care and support Sarahi. Appellant argues there is no evidence that she was a danger to herself or others when she was hospitalized. The trial court reasonably drew the inference that an involuntary psychiatric hospitalization is permitted only when an individual has a diagnosed mental disorder that makes him or her a danger to himself or others, or suffers from a grave disability. (§ 5150, subd. (a).) Our review begins and ends with a determination whether there is any substantial evidence, contradicted or uncontradicted, that supports the trial court's order. (*In re Joshua H.* (1993) 13 Cal.App.4th 1718, 1728.) We do not reweigh the evidence or consider matters of credibility. (*In re E.H.* (2003) 108 Cal.App.4th 659, 669.) Here the evidence supports the jurisdictional findings and orders. (§ 300, subds. (b) & (j).)

*Removal Order*

Appellant's evidentiary challenge to the removal order is without merit. "The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion. [Citations.]" (*In re Jose M.* (1998) 206 Cal.App.3d 1098, 1103-1104.) In order to remove a child from a parent's custody at the dispositional hearing, the evidence must show a substantial danger to Sarahi's physical or emotional well-being and no reasonable way to protect Sarahi if she remains in appellant's custody. (§361, subd. (c)(1).) The risk of emotional harm suffices for removal and is clearly present here. (See *In re H.E.* (2008) 169 Cal.App.4th 710, 720-721; *In re J.S.* (2014) 228 Cal.App.4th 1483, 1492 [domestic violence in the home].)

Appellant argues that risk of harm may not be presumed simply because a parent has a mental illness. (*Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067, 1079.) The evidence shows that appellant's mental illness and resulting behavior

4

jeopardizes Sarahi's safety and welfare.[3]  When appellant stops taking her medication, she is non-communicative and neglects her children.  Appellant admitted that she has "episodes" in which she is confused and withdrawn.  Appellant's behavior, whatever the cause, exposed Sarahi to a substantial risk of harm.  (See e.g., *In re H.E.* (2008) 169 Cal.App.4th 710, 723.)  "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate.  The focus of the statute is on averting harm to the child.  [Citations.]"  (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1136, overruled on other grounds in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748, fn. 6; *In re A.S.* (2011) 202 Cal.App.4th 237, 247 [court may consider parent's past conduct and present circumstances].)  The trial court did not err in removing Sarahi from appellant's custody to protect Sarahi until appellant gets mental health treatment and takes her prescribed medication.

Appellant's reliance on *Kimberly R. v. Superior Court, supra*, 96 Cal.App.4th 1067 is misplaced.  There, mother had a major mental illness "but manage[d] it with medication and psychiatric and psychological supervision."  (*Id.*, at p. 1079.)  The social worker and health professionals believed mother could adequately parent her son.  (*Ibid.*)  Unlike *Kimberly R.,* appellant has a long mental health history, stopped taking her medication and seeing her psychiatrist, lost two children due to unresolved mental health issues, and was committed to a psychiatric hospital before Sarahi's birth.  No health professional, social worker, or family member believed that appellant could safely parent Sarahi.  The trial court did not err in considering appellant's mental history, her inability to safely parent other children, and the present circumstances.  (*In re Tony D.* (1989) 215 Cal.App.3d 889, 900.)

Appellant complains that the trial court did not articulate the requisite findings for Sarahi's removal as required by section 361, subdivision (c)(1).  The court

---

[3] Regardless of whether substantial evidence supports the count b-1 allegation that appellant's mental health issues place Sarahi at substantial risk of harm, the disposition order may be affirmed based on the other jurisdictional findings which are clearly supported by the evidence.  (See *In re Christian P.* (2012) 208 Cal.App.4th 437, 450.)

adopted HSA's proposed findings and impliedly found there was no reasonable way to protect Sarahi if she remained in appellant's care. If the trial court fails to make express findings, the appellate court may infer such findings where the evidence is clear. (*In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1825.) Remanding the matter back for specific oral and written findings would be an idle act. (Civ. Code, § 3532.) Appellant lost two children due to mental health issues and told HSA that she "needs to get herself together" with respect to Sarahi. The trial court was not required to wait until Sarahi is seriously injured or ill before it finds that Sarahi is in need of protection. (See e.g., *In re Heather A.* (1996) 52 Cal.App.4th 183, 194-196; *In re Michael S,* (1981) 127 Cal.App.3d 348, 357-358.)

Appellant argues that the orders violate her right to privacy and that she has been stigmatized by a jurisdictional finding of mental illness. Jurisdictional findings are made with respect to the child, not the parents. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1493, fn. 6.) "[T]he court takes jurisdiction over children (§ 300); it does not take jurisdiction over parents." (*In re Joshua G.* (2005) 129 Cal.App.4th 189, 202.) Appellant's claim that the jurisdictional findings will be used against her to deny reunification is groundless. Pursuant to appellant's request, we have taken judicial notice of an October 26, 2015 postjudgment order in which the trial court ordered family maintenance services for appellant based on findings that appellant is following her case plan, has completed parenting and counseling programs, and has been compliant with medication management and her psychiatric care. (Evid. Code, §§ 452; 459, subd. (b); see e.g., *In re Z.N.* (2009) 181 Cal.App.4th 282, 299-300 [judicial notice taken of post-judgment records to assess lack of prejudice from ICWA error].) It is a marked improvement for appellant.

"The purpose of section 300, subdivision (b) is to protect the child from a substantial risk of *future* serious physical harm and that risk is determined as of the time of the jurisdictional hearing." (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1397.) We cannot turn back the clock and reweigh the evidence. Appellant stresses that the burden of proof in the lower court is clear and convincing evidence, but that is not the

standard for appellate review.  (*In re J.S., supra*, 228 Cal.App.4th at p. 1492-1493.)  On appeal, the clear and convincing test disappears and the rule of conflicting evidence, however, slight, is applied, giving effect to respondent's evidence, however slight, and disregarding appellant's evidence, however, strong.  (*Ibid*.)  The evidence supports the finding that appellant's unresolved mental health issues and failure to take her prescribed medication posed a risk of harm to Sarahi.  (See e.g., *In re James R., Jr.* (2009) 176 Cal.App.4th 129, 135 [past conduct endangering a child may be probative of current conditions if there is reason to believe the conduct will continue]; *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 [same].)

The judgment (jurisdiction and removal orders) are affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

7

Tary L. Cody, Judge

Superior Court County of Ventura

_____

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant.

Leroy Smith, County Counsel, County of Ventura, Alison L. Harris, Assistant County Counsel, for Petitioner and Respondent.